IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD MCDONALD,

     Petitioner,

v.                  //   CIVIL ACTION NO. 1:13CV229
                            CRIMINAL ACTION NO. 1:10CR90
                                (Judge Keeley)

UNITED STATES OF AMERICA,

     Respondent.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE §
2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY,
AND DISMISSING THE CASE WITH PREJUDICE**

Pending before the Court is the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by the pro se petitioner, Richard McDonald ("McDonald") (Dkt. No. 9). On July 29, 2015, the Honorable Robert W. Trumble, United States Magistrate Judge, issued a report and recommendation ("R&R") in which he recommended that the Court deny and dismiss all of the claims in McDonald's motion (Dkt. No. 19). The question presented is whether McDonald can establish that counsel was ineffective. McDonald filed timely objections to Claims One, Three, and Four of the R&R (Dkt. No. 23). The government did not object to the R&R.

For the reasons that follow, the Court **ADOPTS** the R&R, **OVERRULES** McDonalds's objections, **DENIES** the § 2255 motion, **DENIES** a Certificate of Appealability, and **DISMISSES** the case **WITH PREJUDICE**.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

## BACKGROUND[1]

On November 4, 2010, a grand jury in the Northern District of West Virginia returned an indictment charging McDonald with the following five counts:

- **Count One:** Conspiracy to Possess with Intent to Distribute and to Distribute in Excess of 50 Grams of Crack Cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii);

- **Counts Two and Three:** Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

- **Count Four:** Distribution of Cocaine Base and Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and

- **Count Five:** Distribution of Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c).

On February 9, 2011, a jury convicted McDonald of all five counts.[2]

_____

[1] Unless otherwise noted, the citations in this section refer to McDonalds's criminal case, Case No. 1:10CR90, while the citations in the remainder of this Memorandum Opinion and Order refer to the instant civil action, Case No. 1:13CV229.

[2] On April 8, 2011, McDonald wrote a letter to the Court alleging that his attorney was ineffective. The Court ordered the letter to be filed as a pro se motion for new counsel. It granted McDonald's motion on May 31, 2011, and appointed Stephen Herndon as

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE

Following his conviction, the Court sentenced McDonald on May 18, 2012 and imposed concurrent sentences of 121 months of incarceration and 6 years of supervision as to each count (Dkt. No. 65). McDonald then appealed his sentence to the United States Court of Appeals for the Fourth Circuit, challenging a witness's credibility and the drug-quantity determination employed by the Court for sentencing. The Fourth Circuit affirmed his sentence. See United States v. McDonald, 509 F. App'x 249, 251 (4th Cir. 2013) (per curiam). The Supreme Court of the United States later denied McDonald's petition for writ of certiorari. McDonald v. United States, 133 S.Ct. 1843 (Mem) (2013).

McDonald timely filed his motion to vacate pursuant to 28 U.S.C. § 2255, asserting the following four grounds:

1.  Defense counsel was ineffective for failing to argue that the government did not establish the elements of conspiracy and that the jury received improper instructions;

2.  Defense and appellate counsel were ineffective for not objecting to or arguing on appeal that the Court improperly increased the drug quantity determined by the jury;

_____

substitute counsel (Dkt. No. 48).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

3.   Defense and appellate counsel were ineffective for failing to examine and cross-examine the investigating officer and for not objecting to the investigating officer being allowed to sit at the government's table during trial; and

4.   Defense and appellate counsel were ineffective for failing to object to the jury selection process, which resulted in an all-white jury (Dkt. No. 79-1 at 4-5).

On July 29, 2015, Magistrate Judge Trumble issued an R&R, in which he recommended that the Court deny and dismiss McDonald's claims (Dkt. No. 105). On August 24, 2015, McDonald objected to the R&R's recommendations that the Court dismiss Counts One, Three, and Four (Dkt. No. 110).[3] The matter is now fully briefed and ripe for disposition.

## § 2255 STANDARD

Title 28 U.S.C. § 2255(a) permits federal prisoners in custody to assert the right to be released if "the sentence was imposed in

---

[3]   When reviewing a magistrate judge's report and recommendation made pursuant to 28 U.S.C. § 636, a court must review <u>de novo</u> only that portion of the R&R to which an objection is timely made.  28 U.S.C. § 636(b)(1)(C).  When no objections are made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous."  <u>See</u> <u>Webb v. Califano</u>, 468 F. Supp. 825 (E.D. Cal. 1979).  Because McDonald objected to the conclusions in the R&R as to Claims One, Three, and Four the Court has reviewed them <u>de novo</u>.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A petitioner bears the burden of proving such grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## APPLICABLE LAW

A claim of ineffective assistance of counsel may be raised on a § 2255 habeas corpus motion and not on direct appeal, unless it conclusively appears from the record that defense counsel did not provide effective representation. United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999) (citations omitted). This is true regardless of whether the claim might have been raised on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that a defendant could raise an ineffective assistance of counsel claim in collateral proceeding even if it could have been raised on direct appeal because, otherwise, appellate counsel would be "pressured" to bring such claims, regardless of merit, "to ensure that a potential ineffective-assistance claim is not waived . . . and to avoid incurring a claim of ineffective counsel at the appellate stage").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was objectively unreasonable ("the performance prong"), and also that such unreasonable performance prejudiced the defense ("the prejudice prong"). Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy this test, "[t]he defendant must show there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. When examining counsel's behavior, there is a "strong presumption" that behavior is within "the wide range of reasonable professional assistance." Id. at 689. This is a highly deferential standard of reasonableness. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Overcoming Strickland's "high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

The Fourth Circuit distinguishes two categories of decisions made by trial counsel. Personal decisions requiring consent from the defendant include whether to enter a guilty plea, waive a trial by jury, appeal, and testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). Strategic decisions, such as what evidence should be introduced, which objections should be raised, and what pre-trial motions should be filed, "primarily involve

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

trial strategy and tactics." Id. (internal quotations and citations omitted). A strong presumption exists that "counsel's attention to certain issues to the exclusion of others reflects trial tactics," and not neglect. Harrington v. Richter, 562 U.S. 86, 109 (2011) (citations and internal quotation marks omitted).

The Fourth Circuit's rule for ineffective assistance of appellate counsel is the same as that for trial counsel. See Strickland, 466 U.S. at 687; Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000). Appellate counsel is to "examine the record with a view to selecting the most promising issues for review." Id. (quoting Jones v. Barnes, 462 U.S. 745, 752 (1983) (internal quotation marks omitted)). When testing claims of ineffective assistance of appellate counsel, reviewing courts must grant counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). Generally, a petitioner can only overcome the presumption of effective assistance of counsel "when ignored issues are clearly stronger than those presented. . . ." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) (internal quotations omitted)).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

## ANALYSIS

### I.  Claim One

McDonald contends defense counsel was ineffective because he failed to argue that the government never established the elements of conspiracy, and failed to object to the Court's improper jury instruction on conspiracy (Dkt. No. 10 at 3). Noting that a government agent or informant cannot be the only other member of a conspiracy, McDonald contends that two confidential informants were the sole individuals named with him in the conspiracy count of the indictment.[4] Id. at 5. He also contends that an informant or accomplice instruction was appropriate. Id. at 6.

Magistrate Judge Trumble recommended dismissing McDonald's claim regarding the elements of conspiracy because an eyewitness testified about a drug transaction between McDonald and a middleman who then sold the cocaine to another eyewitness (Dkt. No. 19 at 11). Additionally, another eyewitness testified that he had distributed cocaine for McDonald before assisting law enforcement as an informant. Id. Regarding the jury instructions, Magistrate

_____

[4]  The indictment does not list any individuals as co-conspirators. Rather, Count One merely states that the conspiracy was with "other persons known and unknown to the Grant Jury." (Case No. 1:10CR90, Dkt. No. 1 at 1).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Judge Trumble found McDonald's claim "facially inaccurate," given that the jury instructions included an "informant instruction." Id. In his objection, McDonald reiterated that there was a lack of supporting evidence of a conspiracy, and added that a buyer-seller relationship or circumstantial evidence is insufficient to prove a conspiracy (Dkt. No. 24 at 8-9).

Proof of conspiracy requires the following: (1) an agreement between two or more persons; (2) that the defendant knew of the conspiracy; and (3) that the defendant knowingly and voluntarily became a part of the conspiracy. United States v. Hackley, 662 F.3d 671, 678 (4th Cir. 2011) (citations omitted). A conspiracy may be proven by circumstantial evidence. Id. at 679. While a person cannot enter a conspiracy while acting as an informant, a former conspirator can provide evidence showing the existence of a previous conspiracy. United States v. Chase, 372 F.2d 453, 459-60 (4th Cir. 1967).

Testimony from two witnesses provided evidence of the conspiracy involving McDonald (Case No. 1:10CR90, Dkt. No. 59). The first witness, Tito Bell, was a confidential informant. Id. at 88. Prior to his participation as an informant, however, Bell had a drug relationship with McDonald that spanned several years. Id. at

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

71. He testified that he purchased cocaine from McDonald multiple times a day for himself and others, and identified himself as a "middleman." Id. at 73-75. Bell recalled one or two occasions when, after calling McDonald to buy drugs, McDonald sent another individual to sell him the drugs. Id. at 83. This testimony provided the jury with sufficient evidence to infer that a conspiracy existed between McDonald and Bell before Bell became an informant.

The second witness, Channing Shoemaker, was also a confidential informant (Case No. 1:10CR90, Dkt. No. 59 at 25). However, Shoemaker had purchased drugs from McDonald and an individual known as "Fetch" prior to becoming a confidential informant. Shoemaker testified that he had seen McDonald give drugs to Fetch to sell on 10 to 15 occasions during the time he purchased drugs from McDonald before he became an informant. Id. at 21-22. Shoemaker initially knew and purchased drugs from Fetch; however, after Fetch called McDonald using Shoemaker's phone, which provided Shoemaker with McDonald's contact information, Shoemaker began purchasing drugs directly from McDonald. Id. This testimony provided the jury with sufficient evidence to infer a conspiracy between McDonald and Fetch.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Furthermore, the jury instructions provided the following informant instruction: "There can be no conspiracy committed where the defendant's participation or action is exclusively with a government informant. It takes two to conspire, and a government informant . . . is not a true conspirator at any time when he was acting pursuant to a cooperation agreement with the United States." (Case No. 1:10CR90, Dkt. No. 34 at 18).

The jury was permitted to infer a conspiracy, and the Court instructed the jury as requested by McDonald's pending motion. Counsel did not prejudice McDonald's defense by failing to object because an objection to the sufficiency of evidence or jury instruction would not have reasonably changed the outcome. The Court therefore **ADOPTS** the recommendation in the R&R as to Claim One, **OVERRULES** McDonald's objection, and **DISMISSES** Claim One **WITH PREJUDICE**.

## II. Claim Two

McDonald did not object to Magistrate Judge Trumble's recommendation that the Court dismiss Claim Two, which alleged ineffective assistance of trial and appellate counsel for not objecting to or raising on appeal the drug quantity calculated at sentencing (Dkt. No. 19; Dkt. No. 24). Finding no clear error, the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Court **ADOPTS** the recommendation in the R&R and **DISMISSES** Claim Two **WITH PREJUDICE**. See Webb, 468 F. Supp. at 825.

### III. Claim Three

Claim Three consists of two parts (Dkt. 10 at 8-9). First, McDonald claims that counsel was ineffective for failing "to secure [his] rights to confront [the] witness" regarding the chain of custody of the drugs. Id. at 8. Second, McDonald argues that the government should have filed a "615(2) motion" requesting permission for the investigating officer, Officer Link, to sit at the government's table during trial. Id. at 8. He contends that the government prevented the defense from calling Officer Link to testify. Id.

Magistrate Judge Trumble recommended dismissing Claim Three because McDonald provided no evidence supporting a claim of faulty chain of custody or contaminated drugs, and because investigative agents are exempt from Federal Rule of Evidence 615's sequestration rule (Dkt. 19 at 15). McDonald's objection mirrors his motion. He again alleges that a limitation on his right to direct and cross-examine Officer Link constitutes ineffective assistance of counsel (Dkt. No. 24 at 10). He adds that the Court, in its discretion,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

could have required the government to present Officer Link's testimony at an early stage in its case. <u>Id.</u> at 15.

Notably, Officer Link did not need to testify at trial as to the chain of custody of the drugs. "[T]he ultimate question is whether the authentication testimony was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." <u>United States v. Howard-Arias</u>, 679 F.2d 363, 366 (4th Cir. 1982).

During trial, two other officers testified about the investigation (Case No. 1:10CR90, Dkt. No. 59 at 175, 190). Three witnesses testified about McDonald's possession of money and drugs. <u>Id.</u> at 125, 141, and 152. Two forensic chemists testified about drug analysis based on their expertise and training. <u>Id.</u> at 3, 161. Exhibits at trial included drug evidence and lab reports (Case No. 1:10CR90, Dkt. No 21). Furthermore, attached as Exhibit A to Petitioner's own § 2255 motion are West Virginia State Police Forensic Laboratory case submission forms, reports of investigations and related materials, and property disposition reports that provide further justification for the conclusion that it was improbable for the original drugs either to have been exchanged with another or tampered with (Dkt. No 1-1 at 1-40).

13

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Given the abundance of authentication testimony and evidence, Officer Link's testimony was not required to establish the chain of custody.

The second part of Claim Three pertains to Officer Link's presence at the government's table during trial. Federal Rule of Evidence 615 exempts investigating agents from sequestration:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney.

Fed. R. Evid. 615.

Notes from the Senate Committee on the Judiciary specifically address a case agent's presence at counsel table and state: "[I]t was in the intention of the House committee" and "this committee's construction of the rule" to include investigative agents within the second exception. S. Rep. No. 93-1277 (1974), <u>reprinted in</u> 1974 U.S.C.C.A.N. 7051, 7073. Thus, the presence of the government's investigating officer, Officer Link, at counsel table throughout the trial was lawful.

McDonald's motion does not overcome the presumption that both trial and appellate counsel performed professionally and reasonably

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

by deciding not to question Officer Link about the chain of custody of the drugs, and not objecting to his sitting at the government's table. McDonald, thus has failed to establish that counsel performed deficiently. The Court therefore **ADOPTS** the recommendation in the R&R as to Claim Three, **OVERRULES** McDonald's objection, and **DISMISSES** Claim Three **WITH PREJUDICE**.

## IV. Claim Four

McDonald contends that he did not receive a fair trial because the jury and venire were "all white" (Dkt. No. 10 at 10). Magistrate Judge Trumble recommended dismissal of this claim because, although African Americans are a distinctive group, the jury venire was representative of the community (Dkt. No. 19 at 11). Accordingly, there was nothing in the jury selection process or procedure that resulted in underrepresentation of African Americans, and McDonald's Sixth Amendment right to an impartial jury was not violated. Id.

In his objection to Claim Four, McDonald suggests that a particular race was excluded from the jury. He objects to the R&R's conclusion that African Americans are a distinctive group in the community, and calculates that approximately 640 African Americans,

15

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

in total, resided in the community per the 2010 census (Dkt. No. 24 at 4). McDonald suggests that this number is high enough that "commissioners" had a responsibility to inquire further about additional African Americans for jury service. Id. at 4-5. McDonald reasons that by not doing so, African Americans were systematically eliminated as a group. Id. McDonald also asserts that the Court should consider whether potential jurors were not from West Virginia. Id. at 5-6. He also objects that during voir dire counsel failed to make an inquiry of the jurors as to possible racial bias. Id.

Under the Sixth Amendment, criminal defendants have a right to be tried by a jury drawn from a fair cross-section of the community. United States v. Jones, 533 F. App'x. 291, 298-99 (4th Cir. 2013) (citing Taylor v. Louisiana, 419 U.S. 522, 537 (1975)). To prevail on a Sixth Amendment fair cross-section claim, "proof of underrepresentation in a particular panel or venire is not sufficient." United States v. Peoples, 70 F.3d 113, 1 (4th Cir. 1995) (per curium) (citing United States v. Cecil, 836 F.2d 1431 (4th Cir.), cert. denied, 487 U.S. 1205 (1988)). In order to establish a prima facie case that the jury was unfairly selected

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

because it contained no African-Americans, McDonald would need to show that such result was a consequence of a "systematic exclusion to the jury-selection process." Id. (citations omitted).

The Fourth Circuit has adopted a three-prong test, known as the Duren test, to guide courts in analyzing this issue:

> In order to establish a prima facie violation of [the fair-cross-section] requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979))

Regarding the first prong, McDonald objects to a finding that African Americans are a distinctive group based on a calculation that there are in total "approximately 640" African Americans in the community (Dkt. No. 24 at 4). This objection misinterprets the law's purpose. The Duren test considers a group's distinctiveness in relation to a community's population as a whole, not in terms of an absolute number. Furthermore, McDonald's suggestion that "commissioners" had an obligation to seek out, find, and include

17

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

African American jurors, and that a failure to undertake such a search means that the group was excluded, actually undermines the goal of selecting a fair cross-section of the community (Dkt. No. 24 at 4-5). Indeed, seeking out African American jurors would create a procedural exclusion of other groups.

Even assuming that African Americans are a distinctive group and that the first prong of the <u>Duren</u> test is satisfied, McDonald has failed to meet the second and third prongs of the test. The second prong requires that the representation of a distinctive group in venires be unfair and unreasonable in relation to the number of such persons in the community. In accord with 28 U.S.C. § 1863, and to ensure that juries reflect a fair cross-section of the community, the United States District Court for the Northern District of West Virginia uses a plan establishing the methods for jury pool and juror selection. N.D.W. Va. R. <u>Plan Prescribing Method for the Composition of Jury Wheels and the Qualification and Random Selection of Grand and Petit Jurors</u>.[5] McDonald's trial was held in the Clarksburg division, which is comprised of eleven West Virginia counties. <u>Id.</u> at § 2.01. Individuals in both petit and

---

[5] The plan can be found at http://www.wvnd.uscourts.gov/sites/wvnd/files/JURYPLAN.pdf

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

grand juries are selected randomly from a list of residents who are registered to vote in a county within the division or who hold a valid drivers license. Id. at § 2.03. This random selection leads to a fair and reasonable jury representation of all groups in a community. Accordingly, McDonald has failed to meet the second prong of the Duren test.

McDonald has also failed to meet the third Duren prong that underrepresentation of a group in the jury pool is due to their systematic exclusion from the jury selection process. Rather, any "underrepresentation" appears to be a natural consequence of the fact that African-Americans make up less than three percent of the communities from which the Court draws its jurors.[6]

---

[6]See United States Census Bureau, State and County Quick Facts, West Virginia, available at: http://quickfacts.census.gov/qfd/states/54000.html The Census Bureau notes that the West Virginia African-American population was 3.4% in 2010. A closer look, however, reveals a lower percentage in many of the eleven counties from which the Clarksburg Division of the Northern District draws its juries. The Census Bureau provides the African-American population for the counties of Braxton (0.4%), Calhoun (0.2%), Doddridge (1.4%), Gilmer (12.3%), Harrison (1.6%), Marion (3.3%), Monongalia (3.6%), Pleasants (1.3%), Preston (1.1%), Ritchie (0.2%), and Taylor (0.7%). This equates to an average of 2.37% per county before accounting for populations or percentage of registered voters.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Although McDonald did not allege systematic jury exclusion of African Americans in his original petition, his objections to the R&R hint that there should have been a review to determine whether jurors were selected from non-West Virginia counties (Dkt. No. 24 at 6). Here, there was no exclusion because the Court selected jurors only from the eleven West Virginia counties comprising the Clarksburg point of holding court, as prescribed in the District's Jury Plan.

In his objections, McDonald also complains about counsel's failure to request an inquiry into potential juror racial bias. "In non-capital cases with no issues of racial or ethnic prejudice, the district court need not pursue a specific line of questioning on voir dire, provided the voir dire as a whole is reasonably sufficient to uncover bias or partiality in the venire." United States v. Jeffery, 631 F.3d 669, 673 (4th Cir. 2011) (citing United States v. Lancaster, 96 F.3d 734, 739-40 (1996)). Furthermore, the decision to question jurors about racial bias is best left in the hands of trial counsel. Sexton v. French, 163 F.3d 874, 886 (4th Cir. 1998) (citing Turner v. Murray, 476 U.S. 28, 36-37 (1986)). See also Spencer v. Murray, 18 F.3d 229, 234 (4th Cir. 1994)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

(holding that trial counsel's decision "not to ask any questions on voir dire that might have injected race into the case" was a matter of trial tactics and did not constitute ineffective assistance of counsel).

Here, the Court asked potential jurors several questions designed to uncover bias or partiality. For example, it asked if the jurors would be prejudiced for or against the defendant for any reason, and if they would be unwilling to base their verdict solely on the evidence presented at trial and the Court's instructions. It also asked jurors to come forward, either openly or privately at the bench, if there was any reason why they felt they could not be fair to both sides in the case. Given this questioning about general bias, it was well within the range of reasonable trial strategy for counsel not to request a specific voir dire question pertaining to racial bias.

That African-Americans make up such a small fraction of the potential jury pool, coupled with absence of any evidence of their systematic exclusion, establishes that McDonald has failed to meet the third Duren prong.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

Because the second and third prongs of the <u>Duren</u> test are not satisfied, McDonald cannot establish a <u>prima facie</u> case of unfair jury selection in violation of his Sixth Amendment right. Accordingly, the result of McDonald's proceeding would not have been different had trial or appellate counsel challenged the racial makeup of the venires or juries. Therefore, the Court **ADOPTS** the recommendation in the R&R as to Claim Four, **OVERRULES** McDonald's objection, and **DISMISSES** Claim Four **WITH PREJUDICE**.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because McDonald has not made a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 19], OVERRULING OBJECTIONS [DKT. NO. 24], DENYING THE § 2255 MOTION [DKT. NO. 9], DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING THE CASE WITH PREJUDICE**

demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that McDonald has failed to make the requisite showing, and **DENIES** a certificate of appealability

### CONCLUSION

For the reasons discussed, the Court **ADOPTS** the R&R (Dkt. No. 19), **OVERRULES** McDonald's objections (Dkt. No. 24), **DENIES** the § 2255 motion (Dkt. No. 9), **DENIES** a Certificate of Appealability, and **DISMISSES** the case **WITH PREJUDICE**.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and the pro se petitioner, certified mail, return receipt requested, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: August 5, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE